GEORGE P. HOWE AND OTHERS *v.* SCHOOL DISTRICT NO. 3, -JERICHO, AND OTHERS.

[IN CHANCERY.]

*Deed. Estate upon Condition. Conditional Limitation. Chancery. Injunction. Parties. Dower. Husband and Wife.*

The deed in question described the land conveyed as being enclosed as a meeting-house green, on which the brick meeting-house or church at Jericho Corners then stood, and conveyed it to that use, upon the special trust and confidence, and for no other purpose whatever, that the grantees, their heirs and assigns, and the survivor of them, his heirs and assigns, should permit the owners, proprietors and their successors, of the brick meeting-house or church, to occupy the land for the purpose of continuing a brick meeting-house thereon and for a common or green; subject to the reservation and condition that "if the owners or proprietors of the brick meeting-house or church should neglect or omit to occupy the land for that purpose, and by continuing a meeting-house or church upon it, then the land should revert to the grantor and his heirs." *Held* that whether this created an estate upon condition or an estate with a conditional limitation, the grantees and those standing in their right would continue to hold the land so long as the trust should be carried out; the purpose of which was to have the land used for a common or green, with a meeting-house upon it; not necessarily the same house or a brick house, but a house to meet in for religious worship, not constantly necessarily, but kept for that use, and not put to any other use substantially inconsistent with that.

Total abandonment for such use would be a breach of the trust, though the house continued to stand and was put to no other use; but destruction by casualty would not be a breach while the intention to rebuild is entertained in good faith.

Long continued delay to rebuild, or to take any measures to do so, would be strong evidence of a discontinuance of the intended use, but not conclusive. Lack of repairs would be evidence of the same character, but still less conclusive.

Howe et als. *v.* School District.

The court having found that there has been no breach of trust and confidence upon which this grant was made, in respect to a continuance of a meeting-house or church upon the land, it was *held* that the orators, having shown a legal or equitable title to a pew in the church, were entitled to an injunction against the defendant school district, restraining it from converting the meeting-house into a school-house; said district having acquired the right of said Howe, the original grantor, and having taken a quit-claim from the only surviving grantee.

By a conveyance of said land to the school district by the survivor of the grantees in said deed, the district became the assignee of the trust estate and took it just as said survivor held it, and a conversion of the meeting-house into a school-house would be a substantial breach of the trust.

The enclosing of a narrow strip on one side with an adjoining cemetery, and an appropriation of it to burial purposes, before conveyance to the school district, *held* not to be such substantial breach as the school district can avail itself of in defence of this chancery suit.

The widow of a husband who had title to a pew, and the husband of a wife who owns a pew, *held* properly joined as parties complainant, it not appearing in reference to the widow that her right to occupy the pew had been terminated by the assignment of dower, without assigning the pew as a part of it; a pew being assignable to a widow as dower in this state.

BILL IN CHANCERY. The substance of the bill essential to be stated was as follows:

The orators, George P. Howe, Wm. H. H. Wood, Rufus Bishop, Albert Cilley, Lucius Barney, Horatio B. Barney, Mary P. Howe, Lucretia Cilley, and Milton Ford, all of Jericho, county of Chittenden, who bring this bill of complaint in their own behalf and in behalf of all others in the like interest in the church or meeting-house property and land, in said Jericho, hereinafter described, who may choose to come into this cause and become parties thereto, show that the orators are severally pew-owners, and beneficially interested in equity in the brick church, or meeting-house, so called, and the land on which it stands, situated in the village of Jericho Corners, in said Jericho; that on or about the 5th day of May, A. D. 1824, divers persons in said Jericho formed and organized an association by the name of "the Brick Meeting-House Society of Jericho," for the purpose of building a meeting house, and supporting the Gospel, under and by virtue of the first section of an act entitled "an act for the support of the Gospel," passed October 26th, 1798; and that said society did during the years of 1824 and 1825 erect the brick meeting-house or church above described, for public worship, upon certain land in said Jericho, subsequently conveyed by George Howe, as hereinafter mentioned; that said society thereafter continued said meeting-

house or church on said land, and occupied the same until the 3d day of April, 1834, when George Howe aforesaid executed and delivered to Oliver Lowry, Luther Prouty, and William A. Prentiss, a deed of the land on which said brick meeting-house stood. The grant in said deed was to the said Lowry, Prouty, and Prentiss, their heirs and assigns, and the survivor of them and his heirs and assigns. The land was described as being about one acre now enclosed as a meeting-house green on which the brick meeting-house or church now stands at Jericho Corners, so called, in Jericho, meaning to include the whole of the ground now occupied by said brick meeting-house or church, with the sheds attached, and also the whole of the ground enclosed for a common green.

"To have and to hold the said granted premises to the said Oliver Lowry, Luther Prouty, and William A. Prentiss, and their heirs and assigns and to the survivor of them and his heirs and assigns, as joint tenants and not as tenants in common, to the use above named, and for the owners and proprietors of the said brick meeting-house or church, upon the special trust and confidence, and for no other purpose whatever, that is to say that the said Oliver Lowry, Luther Prouty, and William A. Prentiss, their heirs and assigns, and the survivor of them and his heirs and assigns, shall and will from henceforth permit the owners, proprietors, and their successors, of said brick meeting-house or church, to occupy the said land herein before granted, for the purpose of continuing a brick meeting-house thereon, and for a common or green, subject to the following reservation and condition, viz: that if the owners and proprietors of said brick meeting-house or church shall neglect or omit to occupy the said land hereinbefore granted, for the purpose aforesaid, and by continuing a meeting-house or church on said land, then said granted land shall revert to me and my heirs."

This deed was recorded April 11, 1837. The orators further show that said deed was fully accepted, and that on the faith of it the orators have acquired and hold their title as such pew-owners and have become beneficially interested in equity in said meeting-house as above set forth; that Oliver Lowry and Luther Prouty have both deceased, and that William A. Prentiss still survives, and holds the legal title to said land and meeting-house under said deed, and in trust according to its provisions, and that he is now

a resident of Milwaukee in the State of Wisconsin; that said society has ever kept up its organization and still exists, and the land has ever been used for the purposes described in the deed; that in 1857 George Howe died and by his last will and testament duly proved he devised all his estate, with the exception of certain small specific pecuniary legacies to his children, to his widow Mary P. Howe, one of these orators; that neither the said George Howe, nor any of his heirs, nor his residuary legatee Mary P. Howe, have ever claimed or do now claim that the condition of said deed has been broken, or that the owners and proprietors of said brick meeting-house have neglected or omitted to occupy the land for the purposes named in said deed, or that said land has revested in or reverted to the said George Howe or his heirs or the said Mary P. Howe; and that neither the said George Howe, nor any of his heirs, nor the said Mary P. Howe, have ever entered upon said land as owners thereof or claimed any ownership or title therein, by virtue of any asserted or claimed breach of the condition of said deed; that the orators and others resident in Jericho and vicinity, members of said society and owners and proprietors of said meeting-house, and others interested in the cause of public religious worship, expect and intend to continue to occupy said land, for the purpose of continuing a meeting-house thereon and for a common or green, and to continue public religious worship in said meeting-house, unless prevented from so doing; that on the 14th day of March, 1868, Mary P. Howe executed and delivered to James H. Hutchinson, Cyrus M. Spaulding and Hiram Booth, a quit-claim deed of all her right and title in said land and premises; that on the 23d day of April, 1868, Hutchinson, Booth and Spaulding, claiming said land and meeting-house solely by virtue of said quit-claim deed from Mary P. Howe to them, conveyed unto L. B. Howe, and others named, eleven fourteenths of said land and premises, and that on the 5th day of March, 1869, Hutchinson, Booth and Spaulding, and the grantees in the last mentioned deed from Hutchinson, Booth and Spaulding, claiming title solely by virtue of said last mentioned two deeds, conveyed the said land and premises to School District Number 3 in said Jeri-

cho, and that said school district have accepted said deed, and by virtue thereof claim said land and meeting-house as their sole property, and have appointed L. M. Stevens, H. M. Field, and James H. Hutchinson, as a building and repairing committee, with full power and instructions to proceed immediately to take possession of, alter, tear to pieces, and remodel said brick meeting-house, and convert the same into a school-house ; and they intend so to do unless restrained, &c.

Prayer for an injunction on said school district and for general relief.

The defendants, Stevens, Field and Hutchinson, in their joint answer alleged among other things that, when erected, this was the only church in that town except one, which was about three miles distant. In 1858 the roof of the house had become very much decayed and was very leaky, and the house was otherwise in great need of repairs. It was consequently proposed at said meeting that the house be repaired and put into proper condition for use as a church ; but it was voted with great unanimity, that the society would make no repairs, but that if individuals chose, at their own expense, to repair the exterior of it, they might do so. Accordingly soon afterwards money was raised by subscription and voluntary contribution of individuals, mostly not members of said society, and many not members of any church, and expended in repairing the roof of said house.

With this exception, no repairs, save the occasional replacing of broken window panes, were ever made upon the house from the time of its erection, until the defendant, School District No. 3, in March, 1869, commenced repairing and remodelling it for the purpose of converting it into a graded school-house. The house has consequently, for more than fifteen years past, been in a greatly dilapidated and most ruinous condition. The grounds surrounding it, and the sheds and fences, were also equally neglected, until the sheds, since the erection in 1858, of two new churches within forty rods of the house in question, were removed and put in repair by, and for the accommodation of, persons who attend those churches.

For several years after its erection, the house in question con-

tinued to be used for the purpose for which it was built, quite frequently and regularly, but owing to the bad condition into which it had fallen, to the erection of several new churches, in the town and vicinity, and to the want of harmony among those who had been accustomed to meet at this house, the frequency and regularity of religious meetings there, as well as the attendance at them, began at length to diminish, and continued to do so until about the first of April, 1865, when the use of the house for religious meetings or worship in any form was wholly discontinued, and since that time it has not been used for any purpose except as a resort and sporting place for the children of the neighborhood, and, to some extent, for the storage of lumber belonging to neighboring inhabitants.

On the 4th day of May, 1869, the said Prentiss executed and delivered to the defendant School District a deed fof quit-claim of all his right, title and interest in the land described in the deed from George Howe to Lowry, Prouty and Prentiss.

Neither George Howe, nor any of his heirs, nor his widow, Mary P. Howe, ever actually entered upon and took possession of said land, but previous to the execution of the deed from Mary P. Howe to Hutchinson, Spaulding and Booth, the said Mary P. claimed that the title to said land had vested in her by reason of the non user of it for the purpose and in the manner specified in the deed from George Howe to Lowry, Prouty and Prentiss.

Testimony was taken in support of the bill and answer. The facts established by the evidence are stated in the opinion of the court. The case was heard on the pleadings and testimony, at the September term, 1869, Chittenden County, PIERPOINT, Chancellor. Decree, *pro forma*, for the orators according to the prayer of the bill. Appeal by the defendants.

*E. R. Hard* and *L. F. Wilbur*, for the defendants.

*Wm. G. Shaw* and *E. J. Phelps*, for the orators.

The opinion of the court was delivered by

WHEELER, J. The deed from George Howe to Oliver Lowry, Luther Prouty and William A. Prentiss, described the land con-

veyed as being then enclosed as a meeting-house green, on which the brick meeting-house or church at Jericho Corners then stood, and conveyed it to that use, upon the special trust and confidence, and for no other purpose whatever, that the grantees, their heirs and assigns, and the survivor of them, his heirs and assigns, should permit the owners, proprietors and their successors, of the brick meeting-house or church, to occupy the land for the purpose of continuing a brick meeting-house thereon, and for a common or green ; subject to the reservation and condition that if the owners and proprietors of the brick meeting-house or church should neglect or omit to occupy the land for that purpose and by continuing a meeting-house or church upon it, then the land should revert to the grantor and his heirs. Whether this grant vested the whole fee of the land in the grantees until there should be a breach of the trust, and until it should be revested in the grantor, or those standing in his right in this respect, making what is called an estate upon condition, or only conveyed an estate equal in duration to the time during which the trust should be carried out, reserving the rest of the fee in the grantor, making an estate with a conditional limitation, in either case, the grantees and those standing in their right, would continue to hold the land so long as the trust should be carried out. The purpose of the trust was to have the land used for a common or green, with a meeting-house upon it. The trust could be carried out without continuing the same meeting-house, or a brick meeting-house, upon the land ; for it was to revert only upon the omission or neglect to occupy the land for the purpose aforesaid, that is, for a common or green, and by continuing a meeting-house or church upon it, without more than that it should be a meeting-house or church. It is plain that the grantor looked forward to, and in the grant intended to provide for, the times of weakness that owners and proprietors of meeting-houses frequently must pass through, as well as for the times of strength they might enjoy.

The words, meeting-house and church, as used in this deed, imply a house to meet in for religious worship ; but not that it shall be constantly used for that purpose. It must be kept for that use, and not be put to any other use substantially inconsistent

with that. While so kept, it would be continued within the fair meaning of the words of the deed. Should the use of the house for that purpose be wholly abandoned, then a meeting-house or church would not be continued there according to the terms of the deed, although the house should continue to stand and not be put to any other use. Should the house be destroyed by any casualty, while the intention to rebuild and maintain another, for the same purpose, should be in good faith entertained by the owners and proprietors of the one destroyed, and the land should be put to no use inconsistent with that purpose, there would be no breach of the trust and confidence reposed in them by this grantor. Delay to rebuild or to take any measures to do so, long continued, would be strong evidence of a discontinuance of the intended use, but that would not be conclusive. Lack of repair of the house is evidence of the same character, but is still less conclusive.

The testimony in this case shows a want of repair in the house to a considerable extent ; also that the spiritual church accustomed to meet there is weak, and that the owners and proprietors of the house are not zealous in carrying forward religious worship in it. It is well known, however, that many churches have been weaker than this is, and the owners and proprietors of houses of religious worship more cold than these are, and after that the churches have revived and prospered, and the societies become strong and efficient. In view of all experience in such matters, it cannot be assumed but that a time of strength and prosperity will follow the present time of weakness of this church while it has so many members as it now has, and still less, that it has abandoned its hope of existence or its house of worship.

Upon all the testimony, it is not found that there has yet been any breach of the trust and confidence upon which this grant was made, in respect to a continuance of a meeting-house or church upon the land. The questions as to the nature of the estate granted and the necessity of an entry, and as to who could make the entry if one was necessary, which would have been important if a breach had been found, are rendered wholly unimportant to this decision by the failure to find any breach. These

37

questions are, therefore, left without any expression of opinion upon them.

It appears that a narrow strip of the land has been enclosed with the burying ground that adjoined it, and used for burial purposes. The use of ground about churches for burial purposes is not unusual. Some members of the court think that such use of this piece of land, as has been shown to have been made in this case, is consistent with the use required by this deed; others think it inconsistent. The piece so used is very small, and not at all material to this controversy, or to the parties to it. If such use has wrought a technical breach of the trust and a forfeiture of the estate, the forfeiture rests upon no substantial foundation. In equity, the substance is regarded rather than the technicality, and relief from such forfeitures frequently afforded. Those members of the court who think that use to be inconsistent, also think that such relief should be afforded in this case as to prevent the defendants from standing upon any forfeiture on account of it. All therefore are agreed that relief cannot be denied to the orators by reason of that use.

The grant was made in express terms to the grantees, their heirs and assigns, and the survivor of them his heirs and assigns, upon the special trust and confidence set forth in the deed. The grantees were joint tenants of the trust estate and William A. Prentiss is the survivor of them. He has conveyed his title to the defendant school district. By this conveyance the school district became the assignee of the trust estate, and took it just as William A. Prentiss, the survivor of the trustees, held it; and just as the deed provided that the assignee of the grantees, or of the survivor of them, should take it; that is, upon the special trust and confidence to permit the owners and proprietors of the meeting-house to occupy the land for the purpose of continuing a meeting-house thereon and for a common or green. The school district and its officers attempted to convert the meeting-house into a school-house, and the land about it into a school-house yard. Such a conversion would have been a direct and substantial breach of the trust. It is the duty of courts of chancery in this state to prevent such a breach of trust, when properly applied to for that

purpose by proper parties. Each of the orators, except two, has shown either a legal or an equitable title to a pew in the church. One of these two is the widow of a husband who had title to such a pew. Under the statutes of this state, the pew might be assigned to her as dower; and she would have the right to occupy it until dower should be assigned. It does not appear whether dower has ever been assigned her or not, and in the absence of anything to show that her right to occupy the pew has been terminated by the assignment of dower, without assigning the pew as a part of it, it will not be presumed that her right to occupy it has been terminated.

The other of the two is the husband of a wife that owns a pew. He has the right, as husband, to the use of the pew at least during coverture. All the orators therefore have at least equitable interests in the pews. The interests of pew-holders are substantial and material rights in a meeting-house, which in this case would be injuriously affected by the breach of the trust attempted by the defendants. They had the right to join in the suit to protect the interests common to them all. The relief afforded by the court of chancery was the proper relief; therefore, the decree of that court is affirmed.